IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Charles R. Machado, | ) | C/A No. 4:11-1758-KDW |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| Denise Davis,  Pat West, and Coastal | ) | |
| Carolina University (CCU), | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Plaintiff Charles R. Machado ("Plaintiff" or "Machado") filed this action pro se on July 21, 2011, against his former employer, Defendant Coastal Carolina University ("CCU"), as well as individual defendants Denise Davis ("Davis") and Pat West ("West"), alleging race discrimination and retaliation[1] in violation of Title VII of the Civil Rights Act of 1964, as amended, both in connection with CCU's termination of his employment.  ECF No. 1.  Plaintiff also filed a Motion for Leave to Proceed *In Forma Pauperis*, ECF No. 4, which the court granted on September 12, 2011, ECF No. 15.   On October 26, 2011, Defendants[2] moved to dismiss Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(A)-(B), arguing that Plaintiff did not meet the standards required for *in forma pauperis* status, and that the lawsuit was frivolous. ECF

---

[1] Plaintiff's Second Cause of Action is set forth in his Complaint as "Violation of Civil Rights Act 1964/Retaliation Accompanied by a Fraudulent Act." ECF No. 1 at 12.  Liberally construing Plaintiff's Complaint in his favor, the undersigned will consider the Second Cause of Action as one for retaliation in violation of Title VII, there being no available cause of action for Retaliation Accompanied by a Fraudulent Act.

[2] Defendants are jointly represented. Unless otherwise specified, "Defendants" refers to CCU, Davis, and West collectively.

No. 30. Because Plaintiff is proceeding pro se, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion. ECF No. 32. Plaintiff filed a memorandum opposing the motion on November 2, 2011. ECF No. 36. While the Motion to Dismiss was pending before the court, discovery proceeded, and Defendants moved for summary judgment on both causes of action on April 13, 2012. ECF No. 73. The court issued another *Roseboro* order on April 16, 2012. ECF No. 75. On April 30, 2011, Plaintiff filed a response opposing Defendants' Motion for Summary Judgment. ECF No. 83. Pursuant to 28 U.S.C. § 636(c), Local Civil Rule 73.01(B) (D.S.C.), by consent of the parties, ECF Nos. 29 and 37, and order of the court, ECF No. 39, this matter was referred to a magistrate judge to conduct all proceedings and order the entry of a final judgment. This case was previously before Magistrate Judge Shiva V. Hodges and was re-assigned to the undersigned as of January 1, 2012. ECF No. 56.

I.  Factual Background

Defendant CCU hired Plaintiff for a one-year term as a temporary dispatcher in its Department of Public Safety ("DPS") on September 21, 2009. ECF No. 74-7. The offer of employment contained the caveat that "the University reserves the right to terminate this appointment at its sole discretion at any time with or without cause." *Id*. at 2. Plaintiff states that during his employment at CCU, Defendant Davis was his immediate supervisor from September 22, 2009 until November 1, 2009. ECF No. 1 at 4. From November 1, 2009 to the early part of December 2009, Plaintiff contends that Jilleian Sessions Stackhouse ("Stackhouse") was his immediate supervisor, and from the early part of December to Plaintiff's termination on January 21, 2010, Derrick Bratcher ("Bratcher") was Plaintiff's immediate supervisor. *Id.* Defendant

West was the Director of CCU's Department of Human Resources during the time Plaintiff was employed at CCU as a dispatcher.  ECF No. 19 at 3.

During Plaintiff's four months of employment, he sent numerous emails to DPS management on a myriad of issues including the following:  weekly time sheets; being a team player; punctuation in emails; duty roster problems; concerns regarding work schedules; the competence of his supervisor; morale issues; problems with the CAD system[3] and Law Trak;[4] dress code and wearing of uniforms; training and certifications; overtime; chain-of-command concerns; problems with security officers' not calling the radio when they arrived late for work; work orders; camera locations; notification to social security regarding Plaintiff's income and work hours; and CCU's policies, rules, and regulations. ECF Nos. 83-4; 83-9; 83-15. Among others, Plaintiff communicated with Defendant Davis, DPS Operations Manager; Phillip Moore, DPS Major, Operations; Defendant West, Director of Human Resources; Stackhouse, Lt. Investigator, DPS; and Bratcher, Dispatch Supervisor, DPS.  *Id.*

On December 22, 2009, Plaintiff had a breakfast meeting with CCU President David DeCenzo.  ECF No. 83 at 4-5.  Plaintiff contends that President DeCenzo authorized him to

---

[3] Computer-assisted dispatch, also called Computer Aided Dispatch (CAD), is a "method of dispatching taxicabs, couriers, field service technicians, or emergency services assisted by computer. It can either be used to send messages to the dispatchee via a mobile data terminal (MDT) and/or used to store and retrieve data (i.e. radio logs, field interviews, client information, schedules, etc.)."  *See* http://en.wikipedia.org/wiki/Computer-assisted_dispatch (last visited Aug. 27, 2012).

[4] According to the Nicholson Business Systems ("NBS") website, its product called "LawTrak" is a fully integrated law enforcement and court records management system that supports functions ranging from traffic ticket entry to printing reports for the court administration to an incident module that is fully certified for sending in National Incident-Based Reporting System ("NIBRS") data to state agencies. *See* http://www.nbshome.com/lawtrak.htm (last visited Aug. 27, 2012).

investigate and compile information concerning issues in the DPS.[5]  *Id.*  Over the following weeks, Plaintiff sent numerous emails to President DeCenzo concerning the dispatch supervisor, work schedules, poor morale in dispatch, problems concerning the location of the switchboard, the leadership ability and skill set of officers in the police department, tardiness of officers and dispatch personnel, evaluations of supervisors and office managers in dispatch, lack of responsiveness to email requests, problems with the work schedule, and employee theft.  ECF No. 83-14.

On January 5, 2010, Plaintiff sent an email to President DeCenzo informing him that since his last email he had accumulated "75 to a 100 pages of documentation" that he planned to give him "in person." ECF No. 83-14 at 19.  Plaintiff also recounted a telephone conversation he had with Defendant Davis that morning:

> She proceeded to advise me, that she had made a mistake in hiring me. Had she known about my attitude, I would not have been hired. I asked her if anyone had complained about my job performance as a dispatcher. No on the contrary, I was an excellent dispatcher. I asked her what was the basis of saying that I have a bad attitude. My emails to Derrick and Jill were nothing but nit-picking and contained nothing to help make dispatch better in any way. She told me that I was nothing but a CHEERLEADER for the other dispatchers. (She said she had read all of the emails that I sent to Jill and Derrick, I did not forward any of them to her.) Neither her or anyone else in the Department was interested in any of my past management skills or accomplishments. Nothing that I have done in the past in any way applies to anything related to how Coastal Carolina University operates. She advised for me to look at the Public Safety CD, that she had given me and that I was in violation of University policy based on the content of my emails as being detrimental to the Department.

*Id.*  The call from Davis to Plaintiff had been placed in response to an email Plaintiff sent Davis the morning of January 5, 2010 in which he questioned Davis about her involvement in the dispatch department, the use of acronyms in emails, and his perception that supervisors and managers were not team players. *See* ECF No. 83-4. Davis responded to Plaintiff's email in

---

[5] President DeCenzo denied that he authorized Plaintiff to conduct an undercover investigation. ECF No. 74-15 at 2.

writing and told her superiors that she followed-up with the telephone call "to get a better understanding as to what his email is really about." *Id.* at 2. Plaintiff alleges this conversation with Davis led to a plot to fabricate charges against him for failure to follow the chain of command that would ultimately result in his discharge. *See* ECF No. 1 at 6-8.

On January 6, 2010, Plaintiff forwarded an email to President DeCenzo outlining the issues that he and his co-workers had with the dispatch department. The email included concerns with the schedule and dress code and with supervisors not being team players. ECF 83-14 at 20-23.

In Plaintiff's Response to Summary Judgment he refers to a meeting he had with DPS Deputy Chief Thomason on January 8, 2010. ECF No. 83 at 5. According to Plaintiff, the purpose of the meeting was to discuss with Thomason the same concerns that Plaintiff had discussed with President DeCenzo. *Id.* Plaintiff states that he told Thomason of alleged "discrimination by Denise Davis and favoritism shown towards black employees was overwhelming and almost discussed on a daily basis." *Id.* Plaintiff alleges that he told Thomason that "racial tension was affecting the overall morale" in DPS and that other employees "no longer filed any complaints against black employees because it was a waste of time; nothing would be done about the violations." *Id.*

On January 10, 2010, Plaintiff sent an email to President DeCenzo following up on Defendant Davis's January 5, 2010 telephone call to Plaintiff. ECF No. 83-14 at 24. Plaintiff also conveyed rumored information about theft of CCU alarm equipment, and the possibility of a grievance against Davis, Stackhouse, and Major Moore by another employee. *Id.* at 24-25. On January 11, 2010, Bratcher issued Plaintiff a written reprimand for violation of company policies. ECF No. 74-17. The description of the infraction stated:

> Mr. Machado has repeatedly failed to follow the chain of command. On different occasions between the dates of December 26, 2009 thru January 10, 2010 Mr. Machado has in various ways (calls, emails, etc) contacted other personnel within the public safety department concerning various issues without allowing his immediate supervisor adequate time to handle the matters.

*Id.* That same day Plaintiff sent an email to President DeCenzo noting that he "was written up today for not following the chain of command in reference to the emails [he] sent from December 26, until Jan. 5th."   ECF No. 83-14 at 27-29.  Plaintiff stated that he believed the chain-of-command charge was made solely to "get something into [his] personnel file."  *Id.* at 29.  Plaintiff told President DeCenzo that he felt that he had grounds for a harassment complaint against Moore and Defendant Davis because according to CCU policy, as a temporary employee he did not have to go through the chain-of-command. *Id.*  Plaintiff concluded the email by telling President DeCenzo that if he "really want[ed] to expose the corruption and the cover-ups as well as discrimination—[he] would go this route." *Id.*

On January 13, 2010, Plaintiff sent a letter to Major Moore addressing issues with DPS including his complaints about a co-worker's job performance; the failure of his questions to be addressed by his chain of command; and the failure to apply equally to him CCU's rules, regulations, and policies.  ECF No. 83-16.  On January 15, 2010, Plaintiff informed President DeCenzo that he was told not to report to work and that he had been taken off the schedule. ECF No. 83-14 at 40.   Plaintiff noted that he was to meet with the Deputy Chief and Chief, and that it "looks like they are going to terminate me."  *Id.*

 On January 17, 2010, Plaintiff emailed President DeCenzo to inform him that Plaintiff would be sending his report on January 18, 2010 and that it "will give the right to clean house from all levels Top to Bottom – The Corruption and Racial Discrimination is much deeper, than I can get to under the circumstances.  An internal affairs investigator would be able to uncover

more than you can imagine. I only scratched the surface [sic]." ECF No. 83-14 at 43. Plaintiff closed his email by noting that he would be fired on Tuesday and he hoped there was another job at the university that he was qualified to do. *Id.* Plaintiff's ten-page, single-spaced, email report to DeCenzo, dated January 18, 2010, reiterated Plaintiff's various concerns regarding CCU's dispatch department. ECF No. 74-18. On January 21, 2010, CCU terminated Plaintiff's employment as a temporary dispatcher. ECF No. 74-9. The notice of separation indicated that the reason for separation was "Termination of Temporary Contract." ECF No. 74-20.

II. Prior Proceedings and Procedural Background

Following his discharge, on February 15, 2010, Plaintiff filed a lawsuit in South Carolina state court against CCU, Denise Davis, Pat West, and other CCU employees, asserting causes of action framed as Defamation, Discrimination, Wrongful Termination, Ratification, and Intentional Infliction of Emotional Distress. Pl.'s State Ct. Compl., ECF No. 74-2. Plaintiff alleges the state court informed him that it could not consider a race discrimination claim until he had exhausted his administrative remedies by filing a charge of discrimination with the South Carolina Human Affairs Commission ("SHAC"). ECF No. 83 at 1. Plaintiff filed his Charge of Discrimination with SHAC on February 24, 2010. *See* ECF No. 1-1. He then amended his state court complaint, excluding the section of the original complaint captioned "Discrimination" and adding a section captioned "Retaliation." Pl.'s State Ct. Am. Compl., ECF No. 74-3. The amended state court complaint also contained a lengthy factual narrative setting forth the details of Plaintiff's grievances against defendants. The amended state court complaint included numerous references to race discrimination. *Id.* Plaintiff served the amended state court complaint on defendants on August 4, 2010, before he received his right-to-sue letter from SHAC. ECF No. 74-3.

Plaintiff received his right-to-sue letter from SHAC on January 29, 2011, and thereafter requested that the Equal Employment Opportunity Commission ("EEOC") conduct a substantial-weight hearing on SHAC's determination. ECF No. 1 at 2.  On May 10, 2011, Plaintiff received a letter from the EEOC stating that the agency agreed with SHAC's final determination, and enclosed the EEOC's Dismissal and Notice of Rights, also dated May 10, 2011.  ECF No. 1-1. Discovery proceeded in the state court action, and defendants moved for summary judgment on the amended complaint.  The state court heard defendants' motion for summary judgment on March 7, 2011; on March 24, 2011, the state court issued an order granting summary judgment in favor of defendants on Plaintiff's claims of wrongful termination, defamation, retaliation, intentional infliction of emotional distress, and ratification. ECF No. 74-4.  Before the court issued its written order, Plaintiff moved "For the Court to Over Rule the Summary Judgment in Favor of the Defendants and Grant the Plaintiff a New Trial."  ECF No. 83-23.  The state court heard and denied the motion on May 31, 2011. ECF No. 83-25. The court subsequently issued a written order, dated June 7, 2011, wherein it considered Plaintiff's motion as a Rule 59(e) Motion to Amend or Alter a Judgment pursuant to the South Carolina Rules of Civil Procedure, and denied the motion.  ECF No. 83-26.  Plaintiff filed a notice of appeal to the South Carolina Court of Appeals, dated June 25, 2011, appealing the June 7, 2011 order. ECF No. 74-5.  As of the date of this Order, Plaintiff's state court appeal is still pending.

On July 21, 2011, Plaintiff filed the present action in the United States District Court, ECF No. 1, and moved for leave to proceed *in forma pauperis*, ECF No. 4.  The court granted Plaintiff's motion on September 12, 2011, and the case moved forward.  At the close of discovery Defendants moved for summary judgment.[6]

---

[6] Prior to filing their Motion for Summary Judgment, Defendants filed a Motion to Dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(A)-(B), seeking dismissal because: 1) Plaintiff's

III. Discussion

A.  Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

allegations of poverty are untrue; and 2) Plaintiff's lawsuit is frivolous. ECF No. 31.  Plaintiff filed a memorandum opposing Defendants' Motion to Dismiss, claiming he appropriately sought and received *in forma pauperis status* and that the action he brought was not frivolous. ECF No. 36.

An indigent litigant may commence an action in federal court without payment of fees pursuant to 28 U.S.C. § 1915.  To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).  A district court has discretion to grant or deny a petition for *in forma pauperis. Dillard v. Liberty Loan Corp.*, 626 F.2d 363, 364 (4th Cir. 1980).   "This discretion, however, is limited to a determination of the poverty and good faith of the applicant and the meritorious character of the cause in which the relief was asked." *Id.* (internal quotation omitted). "In the absence of some evident improper motive, the applicant's good faith is established is established by the presentation of any issue that is not plainly frivolous." *Id.* (internal quotation omitted).

Regarding the first ground of Defendants' motion, the court finds that Plaintiff provided sufficient documentation and explanation of his financial situation. The court will not now revisit Plaintiff's application to proceed *in forma pauperis* and denies Defendants' request that the matter be dismissed based on Plaintiff's financial status.

In considering Defendants' request that this matter be dismissed because it is "frivolous," the court is mindful that pro se complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and that a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89 (2007). As evidenced by the full discussion of Defendants' Motion for Summary Judgment within, the court finds that Plaintiff's Complaint is not so "plainly frivolous" that dismissal pursuant to 28 U.S.C. § 1915 would be appropriate.  Defendants' Motion to Dismiss, ECF No. 30, is **DENIED**.

those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), overruled on other grounds, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.      Analysis

Plaintiff alleges race discrimination and retaliatory discharge. Defendant moves for summary judgment as to both of Plaintiff's causes of action.

1.   Res Judicata

Defendants first argue they are entitled to summary judgment as to Plaintiff's cause of action for race discrimination because it is barred pursuant to the doctrine of res judicata because it could have been brought as part of Plaintiff's earlier action in state court. ECF No. 74 at 11.  In response, Plaintiff asserts that he was instructed that he could not bring a discrimination claim before filing with SHAC, and that after receiving a right-to-sue letter he could file his complaint in either state court or federal court. ECF No. 83 at 7.

"Res judicata is a rule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and, as to them, constitutes an absolute bar to a subsequent action."  *In re Crews*, 698 S.E.2d 785, 794 (S.C. 2010) (citing Black's Law Dictionary 1174 (5th ed. 1979)).  Res judicata's fundamental purpose is "to ensure that no one should be twice sued for the same cause of action."  *Judy v. Judy*, 712 S.E.2d 408, 414 (S.C. 2011) (internal citations omitted).  As the South Carolina Supreme Court observed, "res judicata is the branch of the law that defines the effect a valid judgment may have on subsequent

litigation between the same parties and their privies. Res judicata ends litigation, promotes judicial economy and avoids the harassment of relitigation of the same issues." *Plum Creek Dev. Co., Inc., v. City of Conway*, 512 S.E.2d 106, 108 (S.C. 1999) (quoting J. FLANAGAN, SOUTH CAROLINA CIVIL PROCEDURE 642 (1996)). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Weston v. Margaret J. Weston Med. Ctr.*, C.A. No. 1:05-2518-RBH, 2007 WL 2750216 at *1 (Sept. 20, 2007) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). This court must accordingly "analyze South Carolina law pertaining to res judicata to determine whether this action is barred by the earlier state action." *Weston*, 2007 WL 2750216 at *1.

In this case, the question is whether the state court's order granting summary judgment in the earlier action bars Plaintiff from asserting a Title VII race discrimination claim in the present action. As a preliminary matter, this court finds that the state court order in the earlier action constitutes a final judgment for the purpose of res judicata. *See Shroup v. Bell & Howell Co.*, 872 F.2d 1178, 1181 (4th Cir. 1989) ("A summary judgment dismissal is a final adjudication on the merits under Fourth Circuit cases."). Further, the fact that the order granting summary judgment is currently pending on appeal[7] does not affect the application of res judicata to that ruling. *See Guinness PLC v. Ward*, 955 F.2d 875, 898 (4th Cir. 1992) ("[I]t is . . . the majority position among the federal court . . . that the existence of a pending appeal does not render a judgment unenforceable nor suspend its preclusive effects absent a party obtaining a stay from either the rendering or enforcing court."); 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4433 at 78-79 & n.11 (2d ed. 2002)

---

[7] Plaintiff asserts that he did not appeal the state court's order that granted defendants summary judgment. Rather, he submits that he appealed the state court's order denying his motion for reconsideration. ECF No. 83 at 7.

(citing *Deposit Bank v. Frankfort*, 191 U.S. 499 (1903)) ("The Supreme Court long ago seemed to establish the rule that a final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually nonexistent situation in which the 'appeal' actually involves a full trial de novo.").  Although the South Carolina Supreme Court has not decided this precise issue, the weight of authority from other jurisdictions grants preclusive effect to an order that is pending on appeal.  *See Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1039 (Md. Ct. App. 2004) ("[T]his rule-that a pending appeal does not affect the finality of a judgment-is now followed by a majority of the states.") (internal citations omitted).

The court must compare the present action with the earlier action to determine if the doctrine of res judicata applies.  The specific South Carolina law regarding the doctrine of res judicata is set forth in *Plum Creek* as follows:

> Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties. Under the doctrine of res judicata, a litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit. To establish res judicata, the defendant must prove the following three elements: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit.

*Plum Creek*, 512 S.E.2d at 109 (internal citations omitted).

Here, there is identity of the parties between the earlier action and the present action as both lawsuits were brought by Plaintiff against CCU, Denise Davis, and Pat West.  The fact that there were additional defendants in the earlier action does not preclude application of the doctrine of res judicata as to the parties in the present action.  "A prior judgment may operate as an estoppel even though the action in which it was rendered included additional parties not joined in the subsequent suit."  50 C.J.S. Judgments § 1122 (2010); *see also Wofford v. United States*, 823 F. Supp. 386 (W.D. Va. 1992).

Identity of subject matter also exists.  Both lawsuits concern Plaintiff's belief he was treated unfairly and unlawfully during his employment and termination.

Finally, as to the third element of the doctrine of res judicata, adjudication of the issue in the former suit, South Carolina law bars litigants from raising not only issues that were actually litigated in the former suit, but also issues that *might have been raised* in the former suit. *See Eichman v. Eichman*, 329 S.E.2d 764, 766 (S.C. 1985). Here, there was no actual adjudication of Plaintiff's race discrimination claim in the former suit because his state court amended complaint did not contain a cause of action for discrimination.  Indeed, Plaintiff could not have included his race discrimination claim at the time he filed his amended complaint because he had not yet exhausted his administrative remedies as required by SHAC procedure and Title VII.  *See* S.C. Code Ann. § 1-13-90 (2006); 42 U.S.C. § 2000e 5(f)(1).  After Plaintiff received his right-to-sue letter from SHAC on January 29, 2011, however, the state court had jurisdiction to hear Plaintiff's race discrimination claim.   At that point, Plaintiff could have, and should have, asserted the claim.   In *Eichman*, the Supreme Court determined that a husband who failed to challenge paternity in a previous family court action was barred by the doctrine of res judicata from challenging paternity in a subsequent action because "the husband could have raised the same issue in the former action." 329 S.E.2d at 765-66.  In *Judy*, the Supreme Court determined that a litigant was precluded from initiating a second lawsuit in circuit court because the probate court in the former suit could have fully adjudicated the claim the litigant sought to bring in the subsequent suit.  712 S.E. 2d at 415.

Here, from January 29, 2011, the date upon which SHAC issued Plaintiff his right-to-sue letter, until March 24, 2011, the date the state court signed the order granting summary judgment, Plaintiff could have amended his complaint a second time to include a cause of action

for race discrimination.  The court in *Judy* held that to determine whether a claim should have been raised in the first suit, four factors can be considered:  (1) whether there is identity of the subject matter in both cases; (2) whether the first and second cases involve the same primary right held by the plaintiff and one primary wrong committed by the defendant; (3) whether there is the same evidence in both cases; and (4) whether the claims arise out of the same transaction or occurrence that is the subject matter of the prior action.  *Judy*, 712 S.E.2d at 414 (ruling that "the four tests previously used by [South Carolina] appellate courts should be considered merely as factors rather than rigid, independent tests.").

Plaintiff's claims of discrimination arise out of the same facts as do his claims in the earlier action.[8]  In the state court's order granting summary judgment to defendants, the court referenced Title VII and Plaintiff's allegations of discrimination related to his retaliation claim and concluded that "Plaintiff failed to produce any evidence demonstrating that an unlawful employment practice occurred at CCU" and that Plaintiff "conceded that Defendants did not terminate him because of his race." ECF No. 74-4 at 8.  Both the state court lawsuit and the present lawsuit arise out of the same transaction or occurrence—termination of Plaintiff's four-month employment.  Both lawsuits use the same evidence—chiefly emails between Plaintiff and other CCU employees, including Defendants, and anecdotal evidence as to treatment of Plaintiff and other DPS employees. For these reasons, Plaintiff could have brought the race discrimination claim in the earlier action. Accordingly, the doctrine of res judicata bars Plaintiff from relitigating a claim of race discrimination in the present action.  Defendants' Motion for Summary Judgment as to Plaintiff's cause of action for race discrimination is granted.

---

[8] Defendants argue that although Plaintiff removed the heading "Discrimination" from his amended complaint, he retained the facts related to discrimination and therefore the state court ruled on those issues. ECF No. 74 at 10-11.

2.  Race discrimination

Even if res judicata did not apply, the court finds that, based on a consideration of the merits of Plaintiff's discrimination claim, Plaintiff cannot prevail.  In his Complaint Plaintiff contends that he was terminated in violation of Title VII. ECF No. 1 at 11. He alleges that he "was fired by defendant Pat West to cover up the ongoing discrimination by Denise Davis and other staff members."  *Id.* at 12.  Defendants assert that Plaintiff's prior admission that his employment was not terminated based on race entitles them to summary judgment on the merits of Plaintiff's discrimination claim.  ECF No. 74 at 17-18.

As the Fourth Circuit has explained, a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004).

> A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m). Alternatively, a plaintiff may "proceed under [the McDonnell Douglas] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

*Capers v. Behr Heat Transfer Sys.*, No. 2:10-3163-BHH, 2012 WL 2149757, *5 (D.S.C. June 13, 2012).

Defendants argue they are entitled to summary judgment on Plaintiff's race discrimination claim because Plaintiff did not present any evidence that Defendants took an adverse employment action against him because of his race.  ECF No. 74 at 17.  Defendants

offer Plaintiff's deposition testimony[9] and argue that this testimony completely contradicts a finding of racial discrimination.  In response to this argument, Plaintiff argues that his deposition testimony is being distorted and he stated during his deposition that, "If I, if I were not white, we wouldn't even be here."  ECF No. 83 at 4.  That line of testimony is as follows:

Q:     I'm not quite sure I understand your discrimination claim. You say there was race discrimination that went on, and what do you mean race discrimination?

A:     If I, if I were not white, we wouldn't even be sitting here.

Q:     So what are you saying; you were terminated because you're white?

A:     I'm saying that's a part of it. I'm not the only, I'm not the only -- If you leave color out of it, if you leave color out of this, that why that's not in the lawsuit, there's nothing about discrimination in the lawsuit.

Q:     And why is that?

A:     No need to have it in there.

Q:     Why; why do you say there's no need?

A:     Why? I don't know.  I don't believe I need to have it in there.

Q:     Well, I mean, you say there was discrimination; that you were discriminated against. Were you discriminated against because you were white?

A:     I was discriminated, in this lawsuit, for the mere fact that I pointed out all the policy violations of Coastal Carolina, NFPA and the CLEA, nothing that I made up. They are statutes. They are policy, they are policies.

ECF No. 83-10 at 4-5.

That line of questioning continued as Defendants attempted to determine the basis of Plaintiff's discrimination claim.  Later in the same deposition, Plaintiff admitted that he was not terminated because of his race.

---

[9] Defendants deposed Plaintiff in the state court action and both parties cite to the deposition testimony in this action.

Q:      You're not answering the question.   Why do you say that you were
        dismissed because you were white.

A:      I didn't say I was dismissed because I was white.

Q:      Then there was not race discrimination, you don't have a claim for race
        discrimination as to your termination, because you're here today saying, 'I
        was not terminated because I was white?'

A:      For the purpose of this lawsuit, no, ma'am, I was not terminated because
        of my race.

Q:      I'm not talking about this lawsuit.   I'm asking questions.   These are
        questions relating to your employment.   At any time have you ever
        believed you were terminated because you were white?

A:      That's a hard question to answer yes or no.  No, ma'am.  Did the deputy
        chief and Pat West terminate my employment because I am white, no
        ma'am.

ECF No. 74-21 at 1-3.

In response, Plaintiff contends that during his deposition he was prevented from entering

into the record documents to prove the discriminatory practice of Defendant Davis and the

failure of Defendant West and the Human Resources Department to take any action.  ECF No. 83

at 4.  Plaintiff also argues that during his deposition he was denied the opportunity to play the

electronic recording of his termination meeting.  *Id.*

The court has reviewed the transcript and recording from Plaintiff's exit interview, and at

no time during this meeting does Plaintiff state or imply his termination was racially motivated.

ECF Nos. 83-11 and 83-30.  The court also has reviewed the documents Plaintiff submitted and

does not find any support for Plaintiff's claim that Defendants' actions were related to Plaintiff's

race.   Plaintiff may not survive summary judgment on conjecture and innuendo alone, and

allegations of simple mistreatment or rudeness do not qualify as actionable conduct. *Baqir v.*

*Principi*, 434 F.3d 733, 747 (4th Cir. 2006); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d

761, 765 (4th Cir. 2003); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000). Title VII is not "a general civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). That Plaintiff may have been made to feel that he was being singled out or treated unfairly, even if true, is not probative evidence of discrimination, without more. Plaintiff has not produced evidence that he was discriminated against or terminated because of his race. Defendants are entitled to summary judgment as to Plaintiff's race discrimination claim.

　　　　3.　Retaliation

In his Complaint, Plaintiff alleges that Defendants retaliated against him by terminating him to avoid investigating Plaintiff's reports of discrimination and policy violations in the DPS. ECF No. 1 at 13. Plaintiff also contends that Defendants retaliated against him by falsely accusing Plaintiff of engaging in criminal activity after his termination. *Id.* Defendants argue that collateral estoppel bars Plaintiff from relitigating his retaliation claim because this claim was litigated and directly determined by the state court decision granting summary judgment in favor of Defendants. ECF No. 74 at 15. Defendants argue that the substance of Plaintiff's state court retaliation cause of action was Plaintiff's contention that he reported race discrimination to his CCU supervisors who retaliated against Plaintiff for reporting such discrimination. *Id.* Defendants contend that the "issues of whether Defendants discriminated against Plaintiff based on his race and retaliated against him for reporting race discrimination" was litigated and decided in Plaintiff's state action. *Id.* at 13.

The doctrine of collateral estoppel, or issue preclusion, has been described by the South Carolina Court of Appeals as follows:

> [O]nce a judgment on the merits has been reached in a prior claim, the relitigation of those issues actually and necessarily litigated and determined in the first suit is precluded as to the parties and their privies in a subsequent action upon a different claim. Collateral estoppel bars relitigation of the same facts or issues necessarily

determined in a former proceeding. When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Bell v. Bennett*, 414 S.E.2d 786, 790 (S.C. Ct. App.1992) (internal citations omitted).

In granting summary judgment to the defendants, the state court issued the following conclusions of law with regard to Machado's retaliation claim:

> 33.    Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for [a private] employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(l).
>
> 34.    To set forth a prima facie case for retaliation, the plaintiff must show that "(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action." Matvia v. Bald Head Island Mgmt. Inc., 259 F.3d 261, 266 (4th Cir. 2001).
>
> 35.    An employee engages in a protected activity for purposes of Title VII when the employee participates or opposes discriminatory practices in the workplace. 42 U.S.C. § 2000e-3(a); Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998).
>
> 36.    Here, Plaintiff failed to produce any evidence demonstrating that an unlawful employment practice occurred at CCU.
>
> 37.    As a result, Plaintiff also failed to produce any evidence demonstrating that he engaged in a protected activity by either participating against an unlawful employment practice or opposing an unlawful employment practice while employed by CCU.
>
> 38.    In Plaintiff s deposition, he conceded that the Defendants did not terminate him because of his race.
>
> 39.    Accordingly, this Court finds that Plaintiff failed to present any evidence in support of his cause of action for retaliation against the Defendants.

ECF No. 74-4 at 8.

The court finds that the state court considered and dismissed Plaintiff's allegations of retaliation.  In its order granting summary judgment, the state court specifically addressed Plaintiff's allegations that he was dismissed because he reported discriminatory practices in the DPS to CCU officials.  *Id.*  The state court found that Plaintiff did not present any evidence that

an unlawful practice occurred or any evidence to support his retaliation claim against Defendants. *Id.*

Plaintiff also asserts that Defendants retaliated against him by making false reports to the CCU Police Department following his termination. ECF No. 1 at 13. This issue was also raised to the state court. At the hearing on Plaintiff's motion to reconsider, the state court noted its understanding the allegedly false reports occurred after Plaintiff's employment was terminated and declined to amend its order granting summary judgment. ECF No. 83-25. Based on the foregoing, the court finds that Plaintiff's retaliation claim is barred by the doctrine of collateral estoppel. Defendants are entitled to summary judgment as to Plaintiff's retaliation cause of action.

### 4. Individual Liability

Defendants further contend that summary judgment should be granted on all causes of action in favor of individual Defendants Davis and West on the basis that individual supervisors cannot be held liable for Title VII violations. The Fourth Circuit Court of Appeals has clearly held that supervisors of a corporate Defendant are not liable in their individual capacities for Title VII violations. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1988); *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (stating that "Title VII does not provide a remedy against individual Defendants who do not qualify as 'employers.'"); *see also Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705, 708 (E.D. Va. 2004). The court grants summary judgment as to Plaintiff's claims against Defendants Davis and West.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Complaint Pursuant to 28 U.S.C. § 1915(e)(2)(A)-(B), ECF No. 30, is DENIED; Defendants' Motion for Summary

Judgment, ECF No. 73, is GRANTED as to all Defendants.  Because the court grants summary judgment as to all of Plaintiff's claims against all Defendants, Plaintiff's case against Defendants is dismissed with prejudice.

In their Answer, Defendants asserted counterclaims against Plaintiff, seeking attorneys' fees and costs. *See* ECF No. 19 at 7-9. No later than **September 21, 2012**, Defendants are to submit a status report informing the court whether they intend to pursue their counterclaims.

IT IS SO ORDERED.

September 13, 2012                                   Kaymani D. West
Florence, South Carolina                       United States Magistrate Judge